IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES H. BOBO                                                                    PLAINTIFF

vs.                                                     CIVIL ACTION NO. 1:10CV00037-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION                                   DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff James H. Bobo for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff filed an application for SSI on November 22, 2004, alleging disability beginning on October 1, 2003. (Tr. 103-105, 108). Plaintiff's claim was denied initially (Tr. 56-60) and on reconsideration. (Tr. 62-64). He filed a request for hearing (Tr. 65) and was represented by an attorney at the administrative hearing on May 10, 2006. (Tr. 323-353). The Administrative Law Judge (ALJ) issued an unfavorable decision on October 24, 2006. (Tr. 43-51). The Appeals Council granted plaintiff's request for a review and returned the case for further development of medical evidence. (Tr. 52-53). The Council directed the ALJ to obtain updated treatment records[1] and to obtain a consultative internal medicine examination with a medical source statement about what the claimant can still do despite his impairments. *Id.* The ALJ was further

---

[1]Plaintiff underwent back surgery after the consultative exam contained in the record, and the record did not contain a comprehensive physical exam after the plaintiff's cardiac and back surgeries. (Tr. 52).

instructed to address all relevant medical opinion evidence in the expanded record, including supporting rationale for the weight assigned and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base. *Id.*

The ALJ conducted a second hearing on March 11, 2008, and on April 8, 2008, issued another unfavorable decision. (Tr. 16-27). Plaintiff timely filed a request for review (Tr. 12), and the Appeals Council denied plaintiff's request by letter dated January 6, 2010. (Tr. 6-9). Plaintiff filed the instant appeal from the ALJ's decision, and it is now ripe for review. In accordance with the provisions of 28 U.S.C. § 636(c), both parties consented to have a magistrate judge conduct all the proceedings in this case, and the undersigned thus has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on February 8, 1957 and was 48 years old at the alleged onset of his disability. (Tr. 358). He completed the ninth grade and had worked previously as a concrete finisher, a bricklayer helper, construction worker, and a mixer. (Tr. 371-372). Plaintiff initially claimed disability due to digestive disorders, poor circulation, and inability to lift, bend, sit, stand or walk for any extended period of time beginning October 1, 2003. (Tr. 127). Plaintiff later underwent lumbar spine surgery, identified degenerative disc disease and experienced left eye blindness as a result of a motor vehicle accident. (Tr. 241, 289-290, 363).

The ALJ determined that plaintiff suffered from "severe" impairments, including back disorders, peripheral vascular disease status post aortobifemoral bypass graft which is widely patent, and left eye blindness (Tr. 18), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 416.920(d), 416.925 and

416.926). *Id.* The ALJ determined that plaintiff's lumbar and cervical spine disc disease and polyneuropathy did not meet the criteria of Listings 11.14, 1.04 or 1.02A or B because there was no radiographic evidence of nerve root involvement. He further held that plaintiff's visual impairment did not meet Listings 2.02, 2.03 or 2.04 and noted that the record did not contain visual acuity values after best correction. Likewise, the ALJ determined that the plaintiff's peripheral vascular disease did not meet the criteria of Listing 4.12 as his September 2007 test did not demonstrate the required ratio.

The ALJ concluded that the plaintiff retains the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. 416.967(b) except he can lift/ carry 20 pounds occasionally and 10 pounds frequently, stand/walk a total of 6 hours and for 3 hours at a time and sit a total of 6 hours and for 4 hours at a time. He can occasionally climb stairs, balance, stoop, crouch, kneel , and crawl, but never climb ropes, ladders or scaffolds. He must avoid exposure to extreme cold temperatures, unprotected heights, and hazardous moving machinery and is limited to jobs that do not require binocular vision.

Further, the ALJ determined that the medical evidence and plaintiff's activities of daily living do not support his claimed disabling level functional limitations and pain and that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 20). The ALJ found that his "lack of medical treatment, lack of medical treatment compliance regarding cessation of alcohol and cigarettes, and inconsistent and unsupported allegations make his credibility questionable." *Id.*

At the time of the ALJ hearing, the plaintiff testified that he could stand for only to ten minutes and fell frequently. (Tr. 360). He estimated that he could lift and carry twenty pounds

3

on a single occasion but not repeatedly (Tr. 366-367), walk fifty feet at a slow pace (Tr. 367) and sit for thirty to forty minutes at a time. (Tr. 344). He further testified that he no longer drank to excess. His daily activities consisted mostly of watching television. (Tr.366). His girlfriend helped him clean his home and do laundry, and his sister prepared his meals. (Tr. 365).

The Vocational Expert's (VE) testimony that the plaintiff had no skills that would readily transfer to other jobs and, given the limits of the RFC assigned by the ALJ, was unable to perform any past relevant work. (Tr. 25). The VE opined that plaintiff could, however, perform other work such as a laundry folder and construction flagger. (Tr. 372-373). Upon considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to jobs that exist in significant numbers in the national economy, and he therefore was "not disabled." (Tr.26-27).

Plaintiff claims the ALJ erred when he did not properly weigh the medical source opinions, did not properly evaluate plaintiff's credibility and relied upon flawed vocational expert testimony. Docket 14, p.14-23.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First,

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[3] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[6] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to

---

[4]20 C.F.R. § 416.920(b) (2003).

[5]20 C.F.R. § 416.920 (2003).

[6]20 C.F.R. § 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[7]20 C.F.R. § 416.920(e) (2003).

[8]20 C.F.R § 416.920(f)(1) (2003).

[9]*Muse*, 925 F.2d at 789.

determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has the limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## DISCUSSION

The plaintiff has not engaged in substantial gainful activity since November 4, 2004, satisfying step one. (Tr. 18). The ALJ found at step two that plaintiff's back disorders, peripheral vascular disease and left eye blindness were severe impairments. *Id.* He found at step

---

[10]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

6

three that plaintiff's impairments did not meet the stringent requirements set out in the listings, *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing), and at step four that he could not return to his past work. In reaching his step five conclusion that plaintiff is not disabled, the ALJ adopted a Residual Functional Capacity assessment consistent with the findings of the non-examining consultant and relied upon testimony from the VE based on that RFC to support his finding that plaintiff could perform the requirements of light and unskilled occupations, such as laundry folder and construction flagger, which exist in significant numbers in the national economy. (Tr. 26).

Plaintiff contends on appeal that the ALJ's failure to afford proper weight to the opinions of his treating and consulting physicians caused the ALJ to reach a decision that was not supported by substantial evidence. Docket 14, p. 14-18. The absence of treatment records from the plaintiff's treating physician, Dr. Kelly, "should have triggered the ALJ's duty to develop the record," according to the plaintiff. Docket 14, p. 15. The undersigned agrees and finds that the ALJ failed to sufficiently develop the record.

An ALJ has a duty to contact a treating physician or other medical sources when the evidence in the record from a treating physician is inadequate to allow the ALJ to determine whether the plaintiff is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). "The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician." *Hilsdorf v. Commissioner of Social Sec.*, 2010 WL 2836374, *11 (E.D.N.Y. July 15, 2010), citing *Devora v. Barnhard*, 205 F.Supp.2d 164, 172-73 (S.D.N.Y.

7

2002). Social Security regulations provide that the Commissioner "*will* seek additional evidence or clarification from your medical source when the report from the medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1) (emphasis the court's). An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports [her] position.'" *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The ALJ acknowledged that he afforded little weight to plaintiff's treating physician, Dr. Kelly; according to the ALJ, because Dr. Kelly did not provide treatment notes to the commissioner, there was no evidentiary support for a finding that plaintiff and Dr. Kelly had a treating relationship.[12] (Tr. 24). Instead, the ALJ gave significant weight to the medical opinion and residual functional capacity assessment of the non-examining consultant, Dr. Caldwell "because Dr. Caldwell reviewed the entire record except Dr. Kelly's medical source statement and letter."[13] (Tr. 25).

Dr. Kelly began treating the plaintiff on January 5, 2005 at a reported treatment

---

[12]The ALJ, likewise, discounted consultative examiner Dr. Bolton's medical statement because it was "inconsistent with the objective findings from her own examination." (Tr. 24). Dr. Bolton found that plaintiff could occasionally lift 10 pounds, but frequently lift no weight; he was able to stand/walk for less than 1 hour in an 8 hour day (15 minutes without interruption) and sit for 3 hours in an 8 hour day (30 minutes without interruption). (Tr. 284-285). As examples of inconsistency, the ALJ cited the doctor's findings that the plaintiff is able to walk without an assistive device and get on and off the examination table with only slight difficulty. Tr. 24-25).

[13]The ALJ dismissed the significance of the omission of Dr. Kelly's report from the documents reviewed by Dr. Cladwell. He found that they "do not significantly impact Dr. Caldwell's opinion because Dr. Kelly failed to provide his treatment notes or other objective findings to support his opinion." (Tr. 25).

frequency of three times per year. (Tr. 306). In a Multiple Impairment Questionnaire dated November 28, 2007, Dr. Kelly reported a diagnosis of PVD (peripheral vascular disease), foot pain lumbago, neuropathy, arthritis and a history of neck fracture and provided a prognosis of "guarded to poor." (Tr. 306). Dr. Kelly represented that his diagnosis is supported by clinical findings from multiple office visits, ER visits and numerous specialty visits. *Id.* He reported abnormal cervical and lumbar spine test results and abnormal nerve conduction studies. (Tr. 307). The plaintiff's primary symptoms were pain, leg numbness and decreased ambulation with a pain rating of 8 on a 10-point scale. (Tr. 307-308). Dr. Kelly opined that in an 8-hour workday, the plaintiff could sit a total of one hour and stand/walk a total of less than one hour (Tr. 308), and he believed the plaintiff to be incapable of even low stress at work. (Tr. 311). While noting that the plaintiff's drug abuse is no longer and issue, he nevertheless commented, "This person has lived an extremely poor lifestyle, has been non-compliant, history of drug abuse and dysfunctional family – he is the cause of all his current problems which currently are unfortunately legitimate, debilitating and permanent." (Tr. 312).

      Citing 20 C.F.R. § 416.912, the Commissioner argues that the plaintiff – not the Commissioner – has the duty to produce evidence that he was disabled. Docket 18, p. 9. It is certainly true that the plaintiff has "the burden of establishing disability" for the first four steps of the sequential evaluation procedure. *McKnight v. Astrue*, 340 Fed. Appx. 176, 180 (5th Cir. 2009). However, the ALJ has an affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The Supreme Court has reminded us that Social Security administrative proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 111, 120

9

S.Ct. 2080, 2085 (2000). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Id. See also* Robert W. Pratt, "From the Bench: Social Security Judging," 36 *Litigation* 3, 4 (Spring 2010). Thus, where the administrative record does not contain medical records from the plaintiff's treating physician, the ALJ should at least provide a reasonable explanation for not obtaining them. *Hilsdorf v. Commissioner of Social Security*, 2010 WL 2836374, at *11 (E.D.N.Y. July 15, 2010). The ALJ rested his decision to discount Dr. Kelly's opinion on the basis that he did not provide his treatment notes to the Commissioner. The record *does* however, contain a medical source statement from Dr. Kelly in which he specifically states that his stated opinions are based upon "multiple office visits, ER visits, & specialty visits" (Tr. 306). Despite this language, and despite the Appeals Council's directive to the ALJ to obtain updated medical records from treating sources, the administrative record in this case does not reveal any attempts by the ALJ to obtain Dr. Kelly's medical records or, indeed, to contact him at all. The report itself was not by Dr. Kelly in response to inquiry by the ALJ; rather, it was sent to the Commissioner by plaintiff's counsel. Moreover, there is nothing in the record to indicate that Dr. Kelly did not or would not have cooperated in producing all of his records. Just as in the *Hilsdorf* case, far from indicating that Dr. Kelly would not have responded to a re-contact by the ALJ, the fact that he submitted a functional capacity assessment and specifically referred to his records indicates that he

> was responsive to requests for information. The fact that the submitted report was incomplete did not relieve the ALJ of his obligation to re-contact [the doctor]; on the contrary, the regulations specifically require an ALJ to "seek additional evidence or clarification from [the claimant's] medical source when the report from 'that' medical source . . .*does not contain all the necessary information* . . . .

*Id.*. at *12, quoting 20 C.F.R. § 1415(e)(1) (emphasis added by *Hilsdorf* court). The ALJ in this

10

case did not indicate any reason for electing not to seek these additional medical records.

Further, the ALJ clearly recognized a conflict existed between the plaintiff's treating physician and the non-examining consultant. A treating physician such as Dr. Kelly has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis. Dr. Caldwell, an agency physician, evaluated the plaintiff's condition only once, on the basis of the documents in the plaintiff's claim file, and the file did not even contain the record evidence from Dr. Kelly when she did so. (Tr. 25).

For an ALJ properly to afford lesser weight to the treating physician's medical opinions he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ declined to give the plaintiff's treating physician controlling weight without possessing the information necessary to perform an analysis under *Newton*[14] and he made no attempt to obtain sufficient information, even in the face of a direct order from the Appeals Council. As a result, the ALJ's decision is unsupported by substantial evidence and should be remanded to a different ALJ for further proceedings.

---

[14]*Newton* noted the factors that an ALJ must consider before declining to give evidence of a treating physician controlling weight:
(1) the physician's length of treatment of the claimant,
(2) the physician's frequency of examination,
(3) the nature and extent of the relationship
(4) the support of the physician's opinion afforded by the medical evidence of record,
(5) the consistency of the opinion with the record as a whole, and
(6) the specialization of the treating physician.
*See* 20 C.F.R. § 404.1527(d)(2)

## PLAINTIFF'S REMAINING ARGUMENTS

Reading the record as a whole, the court concludes that the ALJ's opinion is unsupported by substantial evidence and should be remanded for further development of the record by a different ALJ. Because this action is being remanded for further evaluation consistent with this opinion, the court need not address the merits of the plaintiff's remaining arguments at this time.

## CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 27th day of October, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE